John D. Bennett, S.
This is an application brought on by the administrator through an order to show cause to restrain certain corporations in which this estate owns shares from transferring such stock on the authority of a person to whom letters testamentary have been issued by another court.
Before the court made its decision of August 12, 1968 (57 Misc 2d 419), a hearing was held on the question of the decedent’s domicile. This was after an earlier hearing showed that proceedings purportedly brought by Irma Kalvet Moerd in this court, based upon a copy of process served by her attorney to probate the alleged will of the decedent, were abandoned. *434 Instead of filing it here, the will was sent to St. Croix, Virgin Islands, by the attorney for Mrs. Moerd.
As pointed out in the earlier decision, Mrs. Moerd’s attorney participated in the hearing in this court on her behalf on the issue of domicile; he cross-examined the witnesses and himself testified for his said client on that issue. However, only a copy of the will was exhibited here and it appears that Mrs. Moerd at some time, either pending determination of the proceedings in this court, or later, did file the will in the Virgin Islands territorial District Court at St. Croix, where it has since allegedly been admitted to probate. This court has not been given any copy of the papers and proceedings conducted there but it does appear that the St. Croix proceedings were pro forma and without a hearing or on. notice or process (except possibly publication) served upon the decedent’s grandson. It also appears that the St. Croix .proceedings were probably instituted by Mrs. Moerd in violation of this court’s injunction as set forth in the afore-mentioned decision and subsequent order thereon, copies of which were duly served upon her attorney.
After the prior hearings and after the order was entered on the decision of August 12, 1968, Mrs. Moerd filed a notice of appeal in this court on September 18, 1968, appealing that decision and order to the Appellate Division of the New York Supreme Court. This appeal has not been perfected. She was then given an opportunity, on due notice and on due process served upon her, issued out of this court, to prove the validity of the will in her possession or to show cause why the estate should not be administered under the jurisdiction of this court by the grandson as administrator. Upon her default and failure to come forward, this court had no alternative but to conclude that such proof was not available and it accordingly appointed the grandson as administrator (see decisions of October 1 and 23, 1968).
On the instant motion and petition of the grandson, it now appears that Mrs. Moerd or her attorney(s) had taken possession of various certificates of stock registered in the decedent’s name, which she is now threatening to sell or dispose of under the apparent authority of letters testamentary issued to her out of the Virgin Islands District Court, presumably to distribute the proceeds to herself, as alleged sole beneficiary. The grandson, as administrator, applied to this court and was granted a temporary injunction against the transfer or disposition of any such securities. Upon the return of the motion, three of the five corporations served, recognizing the authority of the administrator appointed by this court, appeared herein *435 and pointed out that the District Court of the Virgin Islands might also have jurisdiction over the certificates and possibly the assets represented thereby even though the decedent was adjudicated by this court to have been a resident of Nassau County when she died, under the decision in Riley v. New York Trust Co. (315 U. S. 343). The other corporation, Safeway Stores, Inc., by telegram requested a postponement of this motion because service upon it had been effected through the New York Secretary of State. However, due to the exigencies involved and the emergency nature of the present situation, the court herein proceeds to decide the motion, reserving to Safeway Stores, Inc., the right to come in for a reargument and reconsideration if it so requests.
A similar situation was considered by the United States Supreme Court in the Riley case (supra). The dispute in that case was brought to a head by an interpleader action in the Delaware courts, since it concerned stock of a Delaware corporation. The dispute was between executors appointed in Georgia and an administrator appointed by a New York Surrogate’s Court concerning stock of the Coca-Cola Corporation. Although the outstanding certificates were physically in Georgia and in the hands of the Georgia executors, it was assumed that Delaware was the situs of the stock. The Georgia executors asserted that the original domiciliary probate was obtained in Georgia with all necessary parties before that court, who were entitled to be heard on the probate under the law of Georgia. This was conceded by the respondent who nevertheless denied that the decedent had been domiciled in Georgia. The New York administrator, however, claimed that he was not a party to the Georgia proceedings and there were New York creditors interested in the administration and that the State of New York had certain claims for estate taxes. It was stipulated that the Georgia petitioners, heirs and beneficiaries had been notified of the New York proceeding for probate only by publication or substituted service in Georgia and they did not appear therein. On this state of the record, the Delaware trial court concluded upon the evidence that the testatrix was domiciled in Georgia but the Supreme Court of Delaware reversed this finding of fact and determined that New York was the true domicile of the decedent. The Coca-Cola Corporation, accordingly, was directed to issue its stock certificates to the New York administrator. Thereafter, because of the importance of the issues, certiorari was granted by the United States Supreme Court to review the matter under the full faith and credit clause of the United States Constitution.
*436 The decision in the Riley case (p. 355) stated that “ Georgia and New York might each assert its right to administer- the estates of its domiciliaries to protect its sovereign interests, and Delaware was free to decide for itself which claimant is entitled to receive the portion of [decedent’s] personalty within Delaware’s borders.” The then Chief Justice Stone concurred upon the single ground that the New York administrator, not having been a party to the Georgia proceedings -and not having been represented by any of those that were parties, was not bound by the Georgia judgment.
In the case now before this court, it appears, however, that this court had jurisdiction in personam over Irma Kalvet Moerd, who appeared here by attorney and through him received the decision and order of this court enjoining her from proceeding further in any other jurisdiction in connection with this estate. Her conduct was questionable, to say the least, in withdrawing the probate proceedings initially begun by her here and then at the same time litigating the issue of domicile in this court and instituting ex parte proceedings in the Virgin Islands. It was an imposition upon the court in St. Croix and created the present anomalous predicament. As a party to the proceedings in this court, she was and is irrevocably bound by the orders and decrees of this court. To hold otherwise would be a violation of the full faith and credit provisions of the United States Constitution. As the Supreme Court said in the Riley case (supra, pp. 348-349) “This clause of the Constitution brings to our Union a useful means for ending litigation. Matters once decided between adverse parties in any state or territory are at rest. Were it not for this full faith and credit provision, so far as the Constitution controls the matter, adversaries could wage again their legal battles whenever they met in other jurisdictions. Each state could control its own courts but itself could not project the effect of its decisions beyond its own boundaries. Cf. Pennoyer v. Neff, 95 U. S. 714, 722. That clause compels that controversies be stilled, so that, where a state court has jurisdiction of the parties and subject matter, its judgment controls in other states to the same extent as it does in the state where rendered. Roche v. McDonald, 275 U. S. 449, 451.” (Emphasis supplied.)
On the merits of the instant application, the court finds that it must assist its administrator to the extent requested, and the application is granted in all respects. The temporary injunction contained in the order of June 19, 1969 is continued and, in addition, the five corporations mentioned are directed to cancel any and all certificates of stock evidencing the dece *437 dent’s ownership or evidencing the ownership of Irma Kalvet Moerd as alleged executrix of the estate of this decedent, and the corporations, being authorized to do business in this State, are further directed to issue new certificates to the New York administrator.
The court considers that it has no alternative in this matter, not only because of the emergency nature of the present situation but also to force a solution of the impasse which has developed and will continue in the administration of this estate unless the conflicting interests asserted by the two estate representatives are settled and determined.
In.its prior decision this court considered also that, while the District Court in St. Croix is a territorial Federal court, insofar as its process and procedure concerned the probate of a will or administration of an estate, it was exercising a function normally reserved to the States and no Federal questions were involved. It is suggested, therefore, that the corporations affected, if they deem it advisable, should utilize the inter-pleader process and procedure afforded by sections 1335 and 2361 of title 28 of the United States Code by appropriate proceedings in the United States District Court for the Eastern District of New York, in which district the administrator resides.